UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHASE CROSSROADS WATERFORD SQUARE, LLC, | : : : | CIVIL ACTION NO. 3:03CV00432 (JCH) |
| Plaintiff, | : : | |
| V. | : : | |
| THE MAY DEPARTMENT STORES COMPANY, | : : : | JUNE 23, 2006 |
| Defendant. | : | |

**PROPOSED FINDINGS OF FACT**

The plaintiff proposes the following facts in addition to those stipulated between the parties and incorporated as part of the pretrial memorandum, which facts are set forth hereafter as proposed facts 1 through 12. In addition thereto, the plaintiff proposes the following facts.

1.  On November 23, 1983, Israel M. Resnikoff and David T. Chase entered into a lease with Caldor, Inc. ("Caldor") (Exhibit 1).

2.  The lease expires January 31, 2014.

3.  The lease was for 82,205 square feet of space with a minimum rent of $431,576 per year, plus obligations in regard to common area charges and taxes.

4. The lease was guaranteed by Associated Dry Goods, which company was acquired by the defendant, the May Department Stores Company ("May") (Exhibit 2).

5. The subject property was conveyed by David T. Chase and Israel M. Resnikoff to Chase Crossroads Waterford Square, LLC (Exhibit 3).

6. The leases for the subject property were assigned to and assumed by the plaintiff (Exhibit 4).

7. Caldor filed for protection in bankruptcy court, and the subject lease was assigned to and assumed by Ames Realty II, Inc. ("Ames"), which in turn declared bankruptcy in August of 2001 (Exhibit 5).

8. Ames rejected the lease in bankruptcy on February 14, 2003.

9. Prior to Ames' rejection of the subject lease, the plaintiff had put the defendant on notice of the possibility of rejection of the subject lease, and had discussed with the defendant the possibility of the defendant purchasing an assignment of the lease from Ames, and in particular, defendant then subletting the subject space to Burlington Coat Factory.

10. As of March 1, 2003, the plaintiff engaged the services of Charter Realty and Development Corporation (Dan Zelson) to head reletting efforts for the subject shopping center (Exhibit 12).

11. The plaintiff relet the land upon which the Caldor building was built as part of a larger parcel pursuant to a ground lease to Lowe's Home Center, Inc. ("Lowe's"), which lease was executed in April of 2005.

12. In order to proceed with the Lowe's lease, the Caldor/Ames building and a portion of the existing shopping center was demolished.

13. The Caldor lease was for 82,205 sq. ft., with a minimum rent due in 2003 of $431,576 per year, together with obligations in regard to reimbursement of common area charges, such as taxes, insurance and maintenance.

14. Prior to the Ames rejection of the subject lease, the plaintiff had put the defendant on notice of the possibility of said rejection of lease, and encouraged the defendant to obtain an assignment of the Caldor lease, which if accomplished would allow the occupant to change its use without complying with exclusives subsequently granted to other shopping center tenants.

15. Plaintiff recommended and agreed that the defendant could sublease and/or assign that lease to Burlington Coat Factory, which expressed interest in the space.

16. Burlington Coat Factory had an existing nearby store, and it would have been relocating its facility.

17. The defendant failed and/or refused to act to protect the Caldor lease and the Caldor lease was ultimately rejected.

18. The plaintiff actively pursued a replacement tenant.

19. The only two tenants that showed any interest in the space was Burlington Coat Factory, which interest was intermittent, and Lowe's.

20. By 2004, the only viable tenant expressing interest in the space was Lowe's.

21. A lease was not executed with Lowe's until April of 2005, which lease contemplated a store and garden shop with a ground floor area of 166,638 square feet.

22. The plaintiff received no compensation for the Caldor lease from February of 2003 through January of 2006. In addition, there were some pre-petition claims. The total amount claimed to be due and owing as of January of 2006, including CAM obligations, is $1,704,634.

23. In conjunction with the Lowe's lease, the plaintiff incurred a real estate commission, which it has prorated based on the square feet of the

Lowe's lease versus the Caldor lease (166,638 X 82,205), which amounts to $188,102.

24. Miscellaneous additional costs were incurred in connection with the Lowe's lease, including legal, title insurance, architectural engineering fees, miscellaneous other costs which have been prorated, and the allocated portion is $54,541.

25. The Caldor lease, together with the CAM obligations, would have generated rent from February of 2006 through January of 2014, in the amount of $4,439,940.

26. The Lowe's lease with its CAM reimbursement prorated based on the ratio of Caldor ground floor area to Lowe's ground floor area will generate $3,948,198 from February of 2006 through January of 2014, resulting in a loss of revenue of $491,742.

27. In order for the plaintiff to effectuate the Lowe's transaction, the plaintiff was required to relocate other tenants in the center, including County Hearing and Balance and Deb Shops and terminate one lease, and expend attorney's fees in connection therewith  Also, the plaintiff was forced to allow rent concessions to Bob's Stores during construction, the total cost of all of the above amounts to $898,624.

28. In order to effectuate the Lowe's transaction, 15,185 square feet of existing space was demolished, in addition to the Caldor's building. A proration of the Lowe's rent for the 15,185 square feet versus the market rents for such demolished space from February of 2005 through January of 2014 results in lost rents totaling $1,456,953.

29. The plaintiff claims interest at 10% pursuant to § 37-3a of the Connecticut General Statutes in regard to the unpaid sums at least through January of 2006, and has also used a 10% discount rate on future claims.

30. The total interest claimed for the sums which remain unpaid from pre-petition of Ames through January of 2006 at 10% is $352,637.

31. The total present value of the entire claim discounted at 10% is $4,676,193. See plaintiff's detailed claim for damages attached hereto as Exhibit A. (Plaintiff has reserved claim for attorney's fees and costs until after the Court's decision, so as not to piecemeal same.)

In addition to the above proposed facts, with respect to defendant's defenses, the plaintiff proposes the additional facts.

32. At no time until after the institution of suit did Caldor, Associated Dry Goods or the defendant claim a breach due to the failure to

have a supermarket be in occupancy of a portion of the subject shopping center.

33.     Any release provided to Caldor in connection with its bankruptcy was in regard to the claim filed against Caldor for attorney's fees incurred by plaintiff.  The release was given as consideration for payment of less than the full amount of attorney's fees claimed.  At the time of the release, defendant was not the parent of Caldor.

34.     The lease and guaranty do not limit or restrict the right of the landlord to let additional space in the shopping center and provide exclusives to subsequent tenants.

35.     Bob's Stores is not a department store.

36.     Bob's Stores has been in the subject shopping since 1995, and no claim was ever made by Caldor, Associated Dry Goods or the defendant until after the institution of suit that Bob's presence constituted a violation of the provision of the Caldor lease that prohibited leasing to another department store.

37.     Burlington Coat Factory never pursued its interest in the subject center.

38. Lowe's was the only tenant interested in the Caldor space at the time that plaintiff entered into the Lowe's lease.

39. If the defendant had protected the Caldor lease, the issue of violating the exclusives plaintiff's predecessors had granted to Bob's Stores would not have been an issue.

40. The plaintiff has not sought to sell, nor does it contemplate selling the subject shopping center, and the valuation of the shopping center with or without the Lowe's lease is of no financial significance to the plaintiff in regard to its claim of damages and lost revenue between February of 2003 and January of 2014.

**PROPOSED CONCLUSIONS OF LAW**

1. A guaranty is a promise to answer for the debt or default of another. It is a species of contract that is separate and distinct from the underlying lease agreement, the payment of which it guarantees. <u>Regency Savings Bank v. Westmark Partners</u>, 59 Conn. App. 160, 164 (2000). The defendant, who assumed the guaranty upon its acquisition of Associated Dry Goods, is therefore liable pursuant to the guaranty for the sums which are claimed to be due under the lease.

2. The plaintiff/landlord has a duty to mitigate damages. What constitutes reasonable efforts to mitigate damages is a question of fact for the trier of fact. <u>Rokalor, Inc. v. Connecticut Eating Enterprises, Inc.</u>, 18 Conn. App. 384, 390 (1989).

3. The reletting of commercial space which may include other adjoining space can constitute a proper mitigation of damages. <u>K & R Realty Associates v. Gagnon</u>, 33 Conn. App. 815, 821-22 (1994).

4. The appropriate measure of damages in regard to a breach of lease, in this case breach of guaranty of a lease, is that which would put the plaintiff in the same position had the breach not occurred. The trial court must determine the total rent payable by the new tenant and allocate that to

the space occupied by the previous tenant.  See K & R Realty Associates v. Gagnon, 33 Conn. App. 815, 821-22 (1994), as well as McGrath v. Shalett, 114 Conn. 622 (1932).

     5.    It is the defendant who bears the burden of producing evidence to demonstrate that the plaintiff failed to use reasonable care to mitigate its damages.  Newington v. General Sanitation Service Co., 196 Conn. 81, 86 (1985).

     6.    The defendant must show that the plaintiff failed to take reasonable action to lessen its damages, that the damages were in fact enhanced by such failure, and that the damages could have been avoided with reasonable certainty.  Preston v. Keith, 217 Conn. 12, 22 (1991).

     7.    The defendant has not sustained its burden of proof in regard to the claimed failure to mitigate damages, and the plaintiff is entitled to judgment in its favor in the amount of $4,676,193, plus reasonable attorney's fees and costs.

PLAINTIFF,
CHASE CROSSROADS WATERFORD SQUARE, LLC


By_____
Richard P. Weinstein, Esquire of
WEINSTEIN & WISSER, P.C.
29 South Main Street, Suite 207
West Hartford, CT  06107
Telephone No. (860) 561-2628
Facsimile No. (860) 521-6150
Federal Bar No. ct06215


**CERTIFICATION**

This is to certify that on the 23rd day of June, 2006, a copy of the foregoing was served upon:

Jeffrey J. Tinley, Esquire
Tinley, Nastri, Renehan & Dost, LLP
60 North Main Street, 2nd Floor
Waterbury, CT  06702-1403



_____
Richard P. Weinstein


CHASE\MAY DEPT STORES\PROPOSED FINDINGS OF FACT\LMV

# EXHIBIT A

Case 3:03-cv-00432-JCH   Document 65   Filed 06/29/2006   Page 12 of 12