# EXHIBIT A

Case 3:03-cv-00432-JCH    Document 68-4    Filed 07/06/2006    Page 1 of 6

**Connecticut Trial Court Official Decisions**

TARTSINIS v. PORTER, No. CV 02-0078127 (May 1, 2003)

MICHAEL TARTSINIS v. KENNETH PAUL PORTER.

*2003 Ct. Sup. 6168*

No. CV 02-0078127

Connecticut Superior Court, Judicial District of Tolland

at Rockville

May 1, 2003

[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]

*MEMORANDUM OF DECISION*

SCHOLL, JUDGE.

*Introduction*

This action is brought in two counts. The First Count claims breach of contract and the Second Count claims unjust enrichment.[fn1] The factual allegations which form the basis of the Plaintiff's claims are that there is due and owing to the Plaintiff, under certain leases, the sum of $175,592.37 as rent, additional rent, and interest, and that the Defendant personally guaranteed the payments under the leases. As to both Counts, the Defendant claims by way of special defenses statute of limitations, accord and satisfaction, and payment. The Defendant also claims laches as a special defense to the Second Count of the Complaint which alleges unjust enrichment.

Trial on this matter was held on November 26, 2002 at which time the parties stipulated to the introduction of numerous exhibits and the court heard testimony from Phil Tartsinis, son of the Plaintiff. Post-trial briefs were filed by January 24, 2003. In his post-trial brief, the Plaintiff reduced his demand to $90,279.94 in past rent plus $25,461.75 in interest. The Plaintiff characterizes this amount as that due as base and additional rents from April 1, 1991 until November 15, 2000.

*Findings of Fact*

In October 1984, the Plaintiff entered into a lease with New England Photo Company, Inc. for the rental of a portion of a commercial building and shopping center owned by the Plaintiff in South Windsor, Connecticut, for a term from October 1, 1984 to September 30, 1985 with an option to extend the lease until September 30, 1987. The Defendant, Kenneth Paul Porter, along with a third party, Mark Roth, entered into a guaranty of this lease which provided that: "if default shall at any time be made by the Tenant in the payment of rent or in the performance of any covenants contained in such Lease, the undersigned, jointly and severally will pay to the Landlord, his personal representatives, or assigns the
CT Page 6169
rent or any arrears thereof and all damages that may arise in consequence

of any default by the Tenant under such Lease, or receipt of written notice of such default from the Landlord, his personal representatives, or assigns. This Guaranty shall be a continuing guaranty, and the liability hereunder shall in no way be affected or diminished by reason of any extension of time that may be granted by the Landlord to the Tenant." In December 1987 the parties entered into another lease for the period of October 1, 1987 to September 30, 1989 with an option to extend the lease to September 30, 1992. The Defendant executed the same guaranty as to this lease. The tenant subsequently exercised its option to extend the lease until September 30, 1992.

The 1987 lease also provided that: "If Tenant shall hold over after the term of this Lease or any extensions thereof, his tenancy shall be on a month-to-month basis upon the same terms and conditions herein contained, except as to monthly rent which shall be determined by the Landlord."

After the expiration of the 1987 lease extension in September 1992, the tenant continued to occupy the premises until November 2000. During that time the tenant was charged the same rent as provided for under the lease until May 1, 1995 when the Plaintiff increased it to $2,000. The tenant never agreed to this increase in rent and continued to pay less than $2,000 as rent for the next more than five years. From January 1996 to November 2000, the tenant paid $1,200 per month in rent plus a sum for water use fees.

*Discussion*

The Defendant claims that his guaranty expired on September 30, 1992, when the lease expired and that it does not extend to any month-to-month tenancy by the tenant. As of that date, according to the Plaintiff's calculation, he was owed $7,206.99 in past due rent. If the guaranty expired at the time alleged by the Defendant, then the question is whether the statute of limitations bars the collection of this amount. The Defendant claims that the statute of limitations bars any claim prior to six years before the commencement of this action, that is, prior to April 1, 1996.

The court will address each of these issues seriatim.

Both the 1984 and the 1987 leases were entered into between the Plaintiff, as landlord, and New England Photo Company, Inc., as tenant. The Defendant executed a guaranty as to each lease. The guaranty for the 1987 lease provided that: "This Guaranty shall be a continuing guaranty,
CT Page 6170
and the liability hereunder shall in no way be affected or diminished by reason of any extension of time that may be granted by the Landlord to the Tenant." The lease provided that: "Tenant shall have the single option to extend this lease upon the same terms and conditions as herein provided, except for rental and option provisions, for the following periods and at the following rentals: Commencing October 1, 1989 and ending September 30, 1992, the annual rent shall be $14,000 payable in monthly installments of $1,166.67 on the first day of each month in advance."

"The interpretation of continuing guaranties, as of other contracts, is principally a question of the intention of the contracting parties, a question of fact to be determined by the trier of facts. *Finnucan v. Feigenspan,* 81 Conn. 378, 381-82, 71 A. 497 (1908); *Fidelity National*

*Bank of South Miami v. Melo,* **366 So.2d 1218,** **1221** (Fla.App. 1979)."
*Monroe Ready Mix v. Westcor Development,* **183 Conn. 348,** **351** (1981). Here there is no evidence from which the court can determine the intent of the parties other than the language of the guaranty and the leases themselves. By its language the guaranty was to continue in effect through any "extension of time that may be granted by the Landlord to the Tenant." The extension of time referred to in the lease is that set forth regarding the option to "extend this lease" for the period commencing October 1, 1989 and ending September 30, 1992. The Plaintiff offered no evidence that the parties intended that the guaranty cover more than this period. Although the lease refers to the possibility of a month-to-month tenancy if the tenant holds over after "the term of this lease or any extension thereof," the guaranty makes no reference to any month-to-month tenancy. The guaranty refers only to any "extensions of time" that may be granted. In light of the references in the lease to an option to "extend this lease," and the absence of any evidence that the intention of the parties was otherwise, the court finds that the reference in the guaranty to "extensions" refers to the extension specifically provided for in the lease and not to any month-to-month holdover. The fact that the lease provides that if the tenant holds over the tenancy shall be month-to-month upon the same terms and conditions of the lease does not extend the application of the guaranty since the guaranty is not a term or condition of the lease but a separate contract.

The Plaintiff cites the decision in *Sponzo, d/b/a T&S Realty v. Gooden,* Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. CVH 9305-4609WI (Jan. 31, 1995), 13 Conn.L.Rptr. 469, in support of his position that the guaranty continued during the eight years of the tenant's month-to-month tenancy. The language of the guaranty in *Sponzo* was essentially identical to that here. There the court stated: "Here, by the language of the guaranty, the parties
CT Page 6171
intended that the guaranty continue through `any extension of time that may be granted by the lessor to the lessee.' It seems clear to the court that the parties intended the guaranty to continue throughout the tenancy of NEDA at the subject premises. The defendant Neville Gooden, who was the president of NEDA, testified that he operated a pharmacy at the subject premises throughout the tenancy. While the lease expired prior to the end of the tenancy (see Part I A), the guaranty by its language was continuing. Further, `[a]n offer for a continuing guaranty is ordinarily effective until revoked by the guarantor or extinguished by some rule of law.' *Associated Catalog, supra,* 210 Conn. 742. There was no testimony or evidence that the defendants here revoked the guaranty. Accordingly, the court finds that the guaranty signed by the defendants continued through the holdover tenancy. This finding is supported by additional language in *Associated Catalog, supra.* `However, [e]ven a continuing guaranty, that is, in terms, unlimited as to duration, imposes liability upon a guarantor only for such period of time as is reasonable in light of all the circumstances of the particular case.' 210 Conn. 742-43. The period of holdover tenancy of NEDA is a reasonable period of time to have this guaranty continue. Accordingly, the defendants are liable as guarantors from March 1990 through September 1993."

This case is distinguishable from *Sponzo* in that the guaranty there was contemplated by its terms to cover any extension of the lease, and, although the tenant's hold over was not pursuant to a renewal of the lease, it was for a period of time contemplated by the lease. The original lease was for five years beginning March 1, 1985 with the option to renew for an additional five years. Therefore the period of the

guarantor's liability under the guaranty was contemplated to extend until 1995. Even though the court found that the lease had not been renewed as provided for in the lease, the tenant held over and did not vacate the premises until 1993. Although the court did not reference this fact in its decision, the holdover period, for which the court held the guarantor liable, was for a period of time less than that provided for in the original lease, assuming the lease had been renewed in accordance with its terms. The court found that this was a reasonable time to impose liability on the guarantor where there is a continuing guarantee, noting that liability can be imposed on a continuing guarantor only for a time that is reasonable in light of all the circumstances of the particular case. This is consistent with the law regarding the interpretation of guaranties. "`Even a continuing guaranty that is, in terms, unlimited as to duration, imposes liability upon a guarantor only for such a period of time as is reasonable in light of all the circumstances of the particular case.' Id. (Monroe Ready Mix Concrete, Inc. v. Westcor Development Corporation, **183 Conn. 348**, **351**, **439 A.2d 362** (1981))." Stelco Industries, Inc. v. Bette, **2 Conn. App. 17**, **21** (1984).
CT Page 6172

The Defendant cites the decision in Home Owners' Loan Corp. v. Strongs', Inc., **69 S.D. 81**, **83** (1942), where the court held that a guarantor under a lease was not liable for rent not paid during a hold over period. The court stated: "We are of the opinion that the liability of the respondents under the endorsement was only to pay after there was a default in the payment of rent during the period covered by the lease. Such we believe is the clear intention of the parties as expressed in the within endorsement of guarantee. Nowhere in this written guarantee is to be found an agreement by the guarantors to pay any rent accruing under an agreement or consent of the landlord given separate and apart from the lease, and we are convinced that to so construe this guarantee as to place liability upon the guarantors for rent accruing under a consent given apart from the lease would lead to absurd consequences. Respondents' liability as guarantors is coextensive with the term provided for in the lease. Heffron v. Treber, 21 S.D. 194, 110 N.W. 781, 130 Am.St.Rep. 711." The Plaintiff claims Home Owners' is distinguishable from this case because the guaranty there was not a continuing one, as here, and the lease required the lessor's specific consent to any holdover. However, as in Home Owners,' here there is nothing in the language of the guaranty which would indicate that it was intended to cover a period beyond the term of the lease and any extension specifically provided for in the lease. In addition, the Plaintiff presented no evidence regarding the circumstances surrounding the execution of the guaranty which would establish that it was the intention of the parties that the Defendant's guaranty would extend beyond the terms of the lease or any extension under the lease. Absent such evidence, the court cannot find that the actions of the tenant by holding over and the landlord by allowing such hold over should serve to bind the guarantor absent any clear consent by the guarantor to be so bound. To find to the contrary would require the court to determine that the Defendant, at the time he executed the guaranty, was assuming a liability of indefinite duration and amount, an obligation a reasonable and prudent person would not undertake. In fact here the Plaintiff is seeking to recover from the Defendant for the amount of an increase in rent not even agreed to by the tenant. Thus the court finds that the guaranty expired on September 30, 1992.

Since the guaranty expired on September 30, 1992, the statute of limitations began to run from that date. General Statutes § **52-576**

(a) provides that: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . ." "`[I]n an action for breach of contract . . . the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted.'
CT Page 6173
(Internal quotation marks omitted.) *Tolbert v. Connecticut General Life Ins. Co.*, 257 Conn. 118, 124, 778 A.2d 1 (2001)." *Lenares v. Miano*, 74 Conn. App. 324, 331 (2002). Here the breach of the guaranty would have occurred when the tenant defaulted under the lease. That occurred first, according to the Plaintiff's records, in April 1991 and continued through the term of the guaranty until the end of September 1992. This action was not brought until March 2002, well over the six years provided by the statute. Thus this action is barred by the statute of limitations. In light of this conclusion the court need not reach the other claims of the parties.

*Conclusion*

Judgment shall enter for the Defendant.

Jane S. Scholl, J.

[fn1] The Plaintiff has not briefed his claim of unjust enrichment so the court considers it abandoned.
CT Page 6174

Syllabi and Procedural History, Copyright © 2002, Secretary of State, Connecticut Compilation Copyright ©2002 Loislaw.com, Inc., All Right Reserved